UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
In re:                                                           :
                                                                 :    Chapter 7 Involuntary Petition
AMC Investors II, LLC,                                           :
                                                                 :    Case No. 08-12265 (CSS)
                              Alleged Debtor.                    :
-----------------------------------------------------------------x

**ALLEGED DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE INVOLUNTARY PETITION**

Alleged debtor AMC Investors II, LLC ("**AMC Investors II**"), submits this

memorandum of law in support of its Motion to Dismiss the Involuntary Petition.

## I.   PROCEDURAL HISTORY

On or about September 30, 2008, Eugenia VI Venture Holdings Limited

("**Eugenia**") filed an involuntary petition (the "**Involuntary Petition**") for relief under Chapter 7

of Title 11 of the United States Code (the "**Bankruptcy Code**") against AMC Investors II.  In

the Involuntary Petition, Eugenia alleges that it is an "eligible" petitioner and that it holds an

unsecured claim against AMC Investors II for $10,710,455.00.[1]

## II.   ARGUMENT

Federal Rule of Civil Procedure  ("**Fed. R. Civ. P.**") 12 is made applicable to this

proceeding pursuant to Fed. R. Bank. P. 1011(b).  Pursuant to Fed. R. Civ. P. 12(b)(1) and (6),

the Involuntary Petition should be dismissed for lack of subject matter jurisdiction and failure to

state a claim upon which relief can be granted because the claim of Eugenia is subject to *bona*

*fide* dispute as to amount, rendering Eugenia an ineligible petitioning creditor under 11 U.S.C.

§ 303(b)(2) and (h)(1).

---

[1] All relevant facts are set forth in the accompanying Motion to Dismiss Involuntary Petition and
Declaration of Ronald Augustin in Support of Motion to Dismiss Involuntary Petition (the "**Augustin**
**Declaration**").

The requirement under Bankruptcy Code sections 303(b)(1), (b)(2) and (h)(1) that there be no *bona fide dispute* with respect to the claim of the petitioning creditor is a matter of subject matter jurisdiction and is the proper subject of a motion filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6). *See Key Mech. Inc. v BDC, 56 LLC (BDC 56 LLC)*, 330 F.3d 111, 118-19 (2d. Cir. 2003). As noted by the Second Circuit in *Key*:

> Whether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings. One of the requirements to bringing such a petition is that the petitioning creditors' claims are free from bona fide dispute. Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement. Otherwise, creditors could, on the basis of relatively untested claims, haul a solvent debtor with whom they have legitimate disputes into bankruptcy court and force it to defend an involuntary proceeding while the bankruptcy court leaves for a later merits determination whether the debtor is even properly before it.

*Id*. at 118-119.

In addition, this case is a classic example of a two-party dispute between a sole petitioning creditor and an alleged debtor for which the parties have adequate remedies in New York state court. In fact, the Involuntary Petition stayed AMC Investors II's appeal of a judgment rendered by the New York State Supreme Court (New York's court of general jurisdiction). For the reasons set forth below, dismissal and/or abstention is warranted on the additional grounds set forth in section 305 of the Bankruptcy Code.

2

**A. REQUIREMENTS FOR ELIGIBILITY OF PETITIONING CREDITORS UNDER SECTION 303(b)(2) AS AMENDED BY BAPCPA**

Section 303 of the Bankruptcy Code governs involuntary petitions.

Section 303(b) provides, in pertinent part, as follows:

> (b) an involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a <u>bona fide</u> dispute as to liability <u>or amount</u>, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
> >
> > (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $12,300 of such claims.

11 U.S.C. § 303(b) (emphasis added). The phrase "as to liability or amount" was added to

sections 303(b)(1) and (h)(1) following the phrase "*bona fide* dispute" by the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"). Pub.L. No. 109-8,

§§ 1234(a)(1)(A) and (a)(12), 119 Stat. 23 (April 20, 2005). *See In re Regional Anesthesia*

*Associates, PC*, 360 B.R. 466, 469 (Bankr. W.D. Pa. 2007).

**B. UNDER SECTIONS 303(b)(2) AND 303(h) AS AMENDED BY BAPCPA, A BONA FIDE DISPUTE AS TO ANY PORTION OF THE AMOUNT CLAIMED DUE BY A PETITIONING CREDITOR RENDERS SUCH CREDITOR INELIGIBLE**

Prior to the BAPCPA amendments to section 303(b), a dispute limited to the

amount was not a "*bona fide* dispute" as to the entire claim, at least under section 303(b)(1). *See*

*e.g.*, *In re Focus Media, Inc.,* 378 F.3d 916, 926 (9th Cir. 2004) (a dispute as to the amount of the

3

claim gives rise to a *bona fide* dispute only when (1) it does not arise from a wholly separate

transaction and (2) netting out the claims of the debtors could take the petitioning creditors

below the amount threshold of section 303); *In re BDC 56 LLC*, 330 F.3d at 120 (bona fide

dispute exists "where a claim for offset arises out of the same transaction and is directly related

to the creditor's underlying claim, and, if valid, could serve as a complete defense to that

claim"); *see Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 21 (5th Cir. 1993)

(claim that petitioner failed to mitigate damages would serve only to reduce creditor's damage

and not create *bona fide* dispute), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 669

(1994).

The 2005 BAPCPA amendments to section 303(b), however, eliminated the

second part of this test. *See In Re Regional Anesthesia Associates*, 360 B.R. at 470 (*citing* to 2

Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 303.03[2][b], at 303-30 (15th

rev. ed. 2006). As a result of the amendments, <u>any</u> dispute regarding the amount that arises from

the same transaction and is directly related to the underlying claim should render the claim

subject to a *bona fide* dispute. *Id. See also In re Tobacco Road Assoc., LP*, 2007 U.S. LEXIS

22990 (E.D. Pa. 2007) (dispute as to amount is sufficient to disqualify petitioning creditor); *In re*

*Euro-American Lodging Corp.*, 357 B.R. 700 (Bankr. S.D.N.Y. 2007) (as a result of the 2005

amendment to section 303(b), any dispute regarding the amount of a claim renders the claim

subject to *bona fide* dispute); *In re Bimini Island Air*, 370 B.R. 408 (Bankr. S.D. Fla. 2007); *In*

*re Orlinsky*, 2007 WL 1240207 (Bankr. S.D. Fla. 2007) (creditors whose claims were partially

disputed by debtor were not eligible creditors under section 303(b)(2)).

Likewise, Bankruptcy Code section 303(h)(1) provides that where, as here, an

involuntary petition has been timely opposed by the alleged debtor, then "after trial, the court

4

shall order relief against the debtor in an involuntary case … only if – (1) the debtor is generally

not paying such debtor's debts as such debts become due unless such debts are the subject of a

bona fide dispute as to liability or amount." 11 U.S.C. § 303(h).  Thus, a *bona fide* dispute on

claim amount would disqualify a petitioning creditor from consideration.

## C.  A *BONA FIDE* DISPUTE EXISTS BETWEEN AMC INVESTORS II AND EUGENIA REGARDING THE AMOUNT OWED TO EUGENIA AND THUS EUGENIA IS AN INELIGIBLE PETITIONER

The Bankruptcy Code does not define the term "*bona fide* dispute" and it has been

left to courts to give content to the term.  Most circuits have adopted an objective test similar to

that first articulated by *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986), which considers

whether there is either a genuine issue of material fact that bears upon the debtor's liability or a

meritorious contention as to the application of law to undisputed facts.  *See B.D.W. Assocs. Inc.*

*v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66-67 (3d Cir. 1989); *Liberty Tool & Mfg. v.*

*Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064-65 (9th Cir.

2002); *In re Sims*, 994 F.2d at 220-21; *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363,

1365 (8th Cir. 1991); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543-44 (10th Cir.

1988).  The reasoning behind the objective standard is that "[t]he legislative history makes it

clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for

the debtor not paying the debt, whether that basis is factual or legal.  Congress plainly did not

intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of

bankruptcy." *Lough*, 57 B.R. at 997.

Under the objective test, the petitioning creditor must first establish a prima facie

case that no *bona fide* dispute exists.  Once a prima facie case has been established, the burden

shifts to the debtor to demonstrate the existence of a *bona fide* dispute.  *See Sims*, 994 F.2d at

221; *Rimell*, 946 F.2d at 1365.  "Because the standard is objective, neither the debtor's subjective

5

intent nor his subjective belief is sufficient to meet this burden," and "[t]he court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *Rimell*, 946 F.2d at 1365.

Applying the objective test here, there is simply no question that Eugenia's claim is subject to *bona fide* dispute as to the amount due. Eugenia avers in the Involuntary Petition that it holds a claim against AMC Investors II in the amount of $10,710,455. But, the claim is the amount of a state court judgment presently on appeal (now stayed), in which AMC Investors II seeks a reduction of at least $2.5 million. Such a potential outcome, depending on the disposition of the state court appeal, is certainly a significant reduction from Eugenia's purported claim, that this discrepancy renders Eugenia's claim subject to *bona fide* dispute. Eugenia should not be permitted to use the threat of bankruptcy to impose an improper judgment on AMC Investors II or to compel AMC Investors II to agree to the entry of an improper judgment. *See* Collier on Bankruptcy, ¶ 303.03 [2] [b] [i] (15th Ed. rev. 2008) (if a creditor with clearly disputed claims could initiate an involuntary filing, creditors could improperly use the involuntary process to extort either payment or at least unfavorable resolution of a bona fide dispute from a debtor, given the serious adverse impact of an involuntary petition on an alleged debtor; Congress wants disputed claims settled outside of bankruptcy).

Furthermore, the judge in the New York trial court admitted in rendering judgment against AMC Investors II that the award for professionals' fees was "arbitrary," which is a *bona fide* basis for appeal of the judgment. *See* Augustin Declaration ¶ 14, Exhibit B.

Since a *bona fide* dispute exists on Eugenia's claim, Eugenia is an ineligible petitioner under section 303(b)(2). Since Eugenia is the sole petitioning creditor, and no other

6

creditors have since joined the petition, the Involuntary Petition is fatally defective and must be dismissed.

**D. THIS IS A TWO-PARTY DISPUTE THAT REQUIRES DISMISSAL OR ABSTENTION UNDER SECTION 305**

This case should also be dismissed and/or the Court should abstain under section 305 of the Bankruptcy Code, since it involves a two-party dispute between a sole petitioning creditor and an alleged debtor for which the parties have adequate remedies in New York state court. *In re Mountain Dairies, Inc.*, 372 B.R. 623, 634-35 (Bankr. S.D.N.Y. 2007) ("the bankruptcy court is not a collection agency."). The parties have already litigated Eugenia's claim against AMC Investors II before the New York state trial court, and an appeal of the trial court's judgment is pending. Why Eugenia now seeks the intervention of this Court on the virtual eve of a determination by the appellate court on the merits of the trial court's judgment, is suspect.

Bad faith in the filing of an involuntary petition has been defined in various ways by the courts. *See e.g. Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992) (a disregard of bankruptcy law and procedure constitutes bad faith, requiring dismissal and appropriate sanctions upon the entity filing the petition); *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 620 (9th Cir. B.A.P. 1986) (bad faith is a fact question to be measured against an objective test of what a reasonable person would have done). An involuntary petition filed as the product of a two-party dispute has been found to be filed in bad faith. *In re Oakley Custom Homes, Inc.*, 168 B.R. 232, 239 (Bankr. D. Col. 1994).

Bankruptcy courts generally dismiss involuntary bankruptcy cases predicated on two-party disputes where the parties have adequate remedies in non-bankruptcy forums. *In re Remex Electronics Ltd. v. Axl Industries (In re Axl Industries, Inc.)*, 127 B.R. 482, 484 (S.D. Fla.

7

1991) (bankruptcy courts "should not take jurisdiction over a two-party dispute, unless special circumstances exist" such as fraud); *Westerleigh Development Corp.*, 141 B.R. 38 (Bankr. S.D.N.Y. 1992); *In re Castle Mall, Inc.*, 127 B.R. 336 (Bankr. D. Del. 1991).  As the Third Circuit stated: "ascertainment of the correct standing of accounts between two parties … is a matter for resolution in state court." *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3d Cir. 1985).

Section 305 of the Bankruptcy Code authorizes suspension or dismissal of the bankruptcy proceedings "if the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).  In determining whether dismissal or abstention under section 305 is warranted, courts have looked at various factors including: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditor are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.  *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *see In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464-65 (Bankr. S.D.N.Y. 2008) (refusing to abstain from hearing voluntary chapter 11 case based on comity).

The facts as set forth in the accompanying Augustin Declaration and Motion establish ample grounds for dismissal or abstention in this case.  The parties have already

8

litigated the matter in New York state court, and the last piece – adjudication of the appeal of the judgment – is the final step. Bringing a new court into the action at this point is a waste of resources and time. Furthermore, the only asset owned by AMC Investors II is stock in AMC Computer Corp., a defunct company that recently completed an assignment for benefit of creditors under New York state law and whose assets have been completely liquidated and distributed. Eugenia cannot reasonably hope to accomplish anything legitimate in this bankruptcy case where AMC Investors II has no assets. Thus, dismissal or abstention under section 305(a)(1) is warranted, as the continuation of the bankruptcy will not benefit any parties.

E. **AMC INVESTORS II IS ENTITLED TO DAMAGES**

Should the Court dismiss the Involuntary Petition, AMC Investors II respectfully requests it be awarded damages. Section 303(i) of the Bankruptcy Code provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment –
>
> (1) against the petitioners and favor of the debtor for –
>
> (A) costs; or
> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for -
>
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

11 U.S.C. § 303(i).

AMC Investors II believes it is entitled to both costs and reasonable attorney's fees and punitive damages against Eugenia for a bad faith filing. In determining whether the Involuntary Petition was filed in bad faith and therefore sanctionable, the Court must look at the objective unreasonableness of the filing and the "subjective elements implicated in [Eugenia's]

9

motivation for such filing." *In re Law Center*, 261 B.R. 607, 612 (Bankr. M.D. Pa. 2001) (awarding costs, reasonable attorney's fees and punitive damages for bad faith filing of involuntary petition).

Eugenia avers in the Involuntary Petition that (i) it is eligible to file the Involuntary Petition, (ii) AMC Investors II is generally not paying its debts as they become due, and (iii) Eugenia holds a claim against AMC Investors II in the amount of $10,710,455.00 that is not subject to *bona fide* dispute. Eugenia intentionally, knowingly and willfully makes such representations when, in fact, Eugenia knows its claim is subject to a *bona fide* dispute by virtue of the appeal of the New York litigation, thus rendering the Involuntary Petition invalid.

In fact, at the October 7, 2008 initial case conference before this Court, Eugenia's counsel admitted that a significant portion of Eugenia's claim is subject to bona fide dispute by virtue of AMC Investors II's appeal of an adverse ruling in New York State court.

As for Eugenia's assertion that AMC Investors II failed to pay its debts as they become due, that too is false. Upon Eugenia's demand that AMC Investors II satisfy the Guaranty, prior to the commencement of the New York litigation and the Involuntary Petition, AMC Investors II offered its sole asset to satisfy the debt – its ownership of stock and the accompanying voting rights in AMC Computer (while AMC Computer was still doing business). Eugenia declined the offer. It is disingenuous and deceitful for Eugenia to now assert AMC Investors II is not paying its debts as they become due, when AMC Investors II offered essentially all that it owned to satisfy the Guaranty.

Furthermore, as set forth in the Augustin Declaration, after the state court judgment was rendered, AMC Investors II did make a payment to Eugenia in partial satisfaction of the Guaranty, signing over to Eugenia the proceeds of an unclaimed property check from the

10

State of Florida Department of Financial Services.  Augustin Declaration ¶ 20, Exhibit C.  This is the only cash known to belong to AMC Investors II.  Yet, Eugenia fails to mention this in either the Involuntary Petition or the Declaration of Edward Smith in support thereof.  Eugenia has clearly not been forthcoming in commencing the present action.

Last, Eugenia is using the Involuntary Petition to stay the appeal pending in New York, because Eugenia has concerns that its disputed judgment will be significantly reduced.  Eugenia is concerned about a reduction because Eugenia intends to use the judgment in an action Eugenia commenced against parties related to AMC Investors II in the Federal District Court in New York.  Eugenia hopes to use the judgment in an effort to collaterally estop the defendants in the Federal District Court action from being able to contest the amount of damages in the Federal District Court case, and hopefully extract a settlement.  Eugenia hopes that filing the Involuntary Petition and staying the pending appeal of the judgment on the eve of oral argument accomplishes this goal.

Eugenia knowingly and willfully misrepresented the basis for its eligibility as a petitioning creditor on the Involuntary Petition, clearly demonstrating bad faith in commencing this action.  Thus, AMC Investors II is entitled to damages, costs, fees and punitive damages under section 303(i), and requests a hearing to determine the amount of damages.

SL1 875046v1/070021.00011

## III.  CONCLUSION

For all the foregoing reasons, AMC Investors II respectfully requests that the

Involuntary Petition be dismissed, that AMC Investors II be awarded damages, and that the

Court grant AMC Investors II such other and further relief it deems just.

Dated:  October 24, 2008                    STEVENS & LEE, P.C.


__/s/ Joseph Grey__
Joseph Grey (No. 2358)
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Telephone:  (302) 654-5180
Facsimile:  (302) 654-5181
Email: jg@stevenslee.com

and

STEVENS & LEE, P.C.
Chester B. Salomon (*pro hac vice* motion pending)
Constantine D. Pourakis (*pro hac vice* motion pending)
485 Madison Avenue, 20th Floor
New York, New York  10022
Telephone:  212-319-8500
Facsimile:   212-319-8505
Email:  cs@stevenslee.com
            cp@stevenslee.com

Attorneys for the Alleged Debtor

12